**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**COMPLEXIONS, INC. d/b/a**
**COMPLEXIONS DAY SPA,**

**Plaintiff,**

**vs.**

**1:09-CV-1402**
**(MAD/DRH)**

**INDUSTRY OUTFITTERS, INC., a corporation formed under the laws of the State of Florida,**

**Defendant,**

**and**

**INDUSTRY OUTFITTERS, INC., a corporation formed under the laws of Canada,**

**Defendant,**

**and**

**GREENBANK CUSTOM WOODWORKING, LTD.,**

**Defendant.**

---

**GREENBANK CUSTOM WOODWORKING, LTD.,**

**Third-Party Plaintiff,**

**vs.**

**ZYTEK, INC.,**

**Third-Party Defendant.**

---

**APPEARANCES:** **OF COUNSEL:**

BREAKELL LAW FIRM, P.C.
10 Airline Drive
Albany, New York 12205
*Attorneys for Plaintiff*

Paul C. Marthy, Esq.
Walter G. Breakell, Esq.

LeCLAIR RYAN
830 Third Avenue
5th Floor
New York, New York 10022
*Attorneys for Defendant*
*Industry Outfitters, Inc.*

Jeffrey M. Zalkin, Esq.

TOMASELLI LAW OFFICES
P.O. Box 97
Poestenkill, New York 12140
*Attorneys for Defendant/Third*
*Party Plaintiff*
*Greenbank Custom Woodworking, Ltd.*

Patrick J. Tomaselli, Esq.

GIBSON, McASKILL LAW FIRM
69 Delaware Avenue
Suite 900, Chemical Bank Building
Buffalo, New York 14202
*Attorneys for Third Party Defendant*
*Zytek, Inc.*

Victor Oliveri, Esq.

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## INTRODUCTION

Plaintiff Complexions, Inc. d/b/a Complexions Day Spa ("Complexions" or "plaintiff") commenced this action against defendants Industry Outfitters, Inc. of Florida and Canada ("Industry Outfitters") and Greenbank Custom Woodworking, Ltd. ("Greenbank" or "third-party plaintiff") for breach of contract and breach of warranty.[1] Greenbank commenced a third-party

[1] On December 17, 2009, plaintiff filed a complaint in this action. (Dkt. No. 1). On March 22, 2010, plaintiff filed an amended complaint. (Dkt. No. 12). On July 15, 2010, plaintiff filed a second amended complaint. (Dkt. No. 27).

action against Zytek, Inc.[2], ("Zytek" or "third-party defendant") alleging breach of warranty, breach of contract and seeking indemnification.[3]

Presently before the Court is Zytek's motion for an order: (1) dismissing the third-party complaint for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) or, in the alternative; (2) dismissing the third-party complaint for insufficient service of process or, in the alternative; (3) dismissing the third-party complaint pursuant to 1312(a) of the New York Business Corporation Law or, in the alternative; (4) dismissing the third-party complaint based upon the doctrine of *forum non conveniens*.[4] (Dkt. No. 70).

**BACKGROUND**

The facts of the case are taken from plaintiff's complaint and third-party plaintiff's complaint and are, for the purpose of third-party defendant's motions, presumed to be true. Complexions is a New York corporation with its principal place of business in Colonie, New York. Industry Outfitters is a Florida and Canadian corporation with its principal place of business in Ontario, Canada. Greenbank is a limited liability company formed under the laws of Canada with its principal place of business in Ontario, Canada. Zytek was a Canadian corporation with its principal place of business at 524 Watson Street East, Whitby, Ontario, Canada. According to Zytek's President, Harlin Gale Schock, Zytek was in the business of manufacturing and selling adhesives, blend solvents and manufactured lacquer coatings, i.e., glue.

---

[2] Third-party defendant asserts that the correct name is "580090 Ontario Inc." and that third-party defendant has been incorrectly sued as Zytek. However, the caption has not been amended and thus, the Court will refer to third-party defendant as Zytek.

[3] On November 19, 2010, Greenbank filed a third-party complaint. (Dkt. No. 46). On March 11, 2011, Greenbank filed an amended third-party complaint. (Dkt. No. 65).

[4] For purposes of this motion, "third party complaint" refers to the "amended third party complaint".

In December 2007, plaintiff entered into an agreement with Industry Outfitters wherein Industry Outfitters agreed to design, furnish and install custom cabinetry, display cases, desks and other items at plaintiff's day spa in Colonie, New York for payment in the sum of $231,000.00. Industry Outfitters entered into a subcontract agreement with Greenbank to assemble, furnish and install the cabinetry and casework at the day spa. Shortly thereafter, Zytek sold and delivered adhesive for Greenbank to utilize in the assembly and construction of the custom cabinetry and casework. According to Schock, in September 2008, Zytek sold its assets to Adhpro Adhesives, Inc. ("Adhpro"), another Canadian glue manufacturer.[5] After the asset sale, Adhpro's principal place of business became 524 Watson Street East.

Following delivery and installation of the cabinetry and casework, the wood veneer and surfaces of the cabinetry and casework began to delaminate. On July 15, 2010, plaintiff commenced an action against Industry Outfitters and Greenbank alleging four causes of action based in breach of contract and breach of warranty seeking unliquidated damages in an amount expected to exceed $300,000.00. On November 12, 2010, Greenbank commenced a third-party action against Zytek alleging five causes of action for indemnification, breach of warranty, breach of contract and negligence.

**DISCUSSION**

**I. Motion to Dismiss for Lack of Personal Jurisdiction**

Zytek moves to dismiss the third-party complaint based upon lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). The amenability of a foreign corporation to suit in a federal court in a diversity action is determined in accordance with the law of the state where the court sits, with "federal law" entering the picture only for the purpose of deciding whether a state's assertion of

[5] Schock asserts that the assets sold also included the name "Zytek, Inc." and therefore, third-party defendant changed its name to "580090 Ontario Inc."

jurisdiction contravenes a constitutional guarantee. *Arrowsmith v. United Press Int'l.*, 320 F.2d 219, 223 (2d Cir. 1963). District courts resolving issues of personal jurisdiction must therefore engage in a two-part analysis. *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999). First, they must determine whether there is jurisdiction over the defendant under the relevant forum state's laws. *Id.* Second, they must determine whether an exercise of jurisdiction under these laws is consistent with federal due process requirements. *Id.*

Since there has been no discovery and no evidentiary hearing on jurisdiction, third-party plaintiff need make only a *prima facie* showing that jurisdiction is proper. *See Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 196-97 (2d Cir. 1990). The Court must construe the pleadings and supporting affidavits in the light most favorable to third-party plaintiff. *See PDK Labs v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997). The Second Circuit explains:

> In deciding a pretrial motion to dismiss for lack of personal jurisdiction a district court has considerable procedural leeway. It may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion. If the court chooses not to conduct a full-blown evidentiary hearing on the motion, the plaintiff need make only a prima facie showing of jurisdiction through its own affidavits and supporting materials. Eventually, of course, the plaintiff must establish jurisdiction by a preponderance of the evidence, either at a pretrial evidentiary hearing or at trial. But until such a hearing is held, a prima facie showing suffices, notwithstanding any controverting presentation by the moving party, to defeat the motion.

*Marine Midland Bank N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir.1981) (citations omitted). "[A] *prima facie* showing of jurisdiction . . . means that plaintiff must plead facts which, if true, are sufficient in themselves to establish jurisdiction." *Darby Trading Inc. v. Shell Int'l Trading and Shipping Co. Ltd.*, 568 F.Supp.2d 329, 333 -334 (S.D.N.Y. 2008) (citation omitted). A plaintiff may "make this showing through [its] own affidavits and supporting materials[,] containing an

averment of facts that, if credited . . ., would suffice to establish jurisdiction over the defendant." *Id.* (citation omitted).

**A. N.Y. C.P.L.R. § 302(a)(3)(ii)[6]**

Third-party plaintiff contends that Zytek is subject to specific jurisdiction under New York's long-arm statute because the third-party claims arise from third-party defendant's commission of a tort outside New York causing injury to plaintiff in New York. *See* N.Y. C.P.L.R. § 302(a)(3)(ii).[7] Under C.P.L.R. § 302(a)(3)(ii), personal jurisdiction may be asserted over a non-domiciliary if the non-domiciliary "commits a tortious act without the state" injuring a person within New York, and (ii) expects or should reasonably expect the act to have

---

[6] In the motion to dismiss, third-party defendant discusses C.P.L.R. § 301 and argues that general jurisdiction may not serve as a basis for jurisdiction in this matter. Third-party plaintiff does not oppose this portion of the motion but rather, relies solely upon the long arm statute as a basis for jurisdiction in this matter. Thus, the Court will confine the analysis to the applicable sections of C.P.L.R . § 302. Moreover, while third-party defendant argues that the exercise of personal jurisdiction pursuant to § 302(a)(1) would violate the long arm statute, third-party plaintiff presents no argument in support of jurisdiction pursuant to this subsection. Accordingly, the Court will confine its analysis to § 302(a)(3)(ii).

[7] N.Y. C.P.L.R. § 302(a) provides:

> Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
>
> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
>
> 2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
>
> 3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he
>
> > (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
> >
> > (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or
>
> 4. owns, uses or possesses any real property situated within the state.

consequences in the state and derives substantial revenue from interstate or international commerce. Zytek concedes, for the purposes of this motion only, that Zytek's production of the glue at issue constitutes commission of tort outside of New York. Therefore, Zytek's motion focuses on the remaining factors in § 302(a)(3)(ii). To wit, Zytek argues that Greenbank cannot establish the "foreseeability" requirement and further, that Zytek did not derive substantial revenue from interstate or international commerce.

"The test of whether a defendant expects or should reasonably expect his act to have consequences within the State is an objective rather than subjective one." *Kernan v. Kurz-Hastings, Inc*., 175 F.3d 236, 241 (2d Cir. 1999) (citation omitted). "New York courts have asserted that the simple likelihood or foreseeability 'that a defendant's product will find its way into New York does not satisfy this element, and that purposeful availment of the benefits of the laws of New York such that the defendant may reasonably anticipate being haled into New York court is required'". *Id.* (to avoid conflict with federal constitutional due process limits, New York Courts apply the "reasonable expectation" requirement). "Stated differently, the foreseeability requirement is not satisfied unless there are tangible manifestations showing that the nondomiciliary defendant either should have known where its product was destined or was attempting to reach a New York market." *Yash Raj Films (USA) Inc. v. Dishant.com LLC*, 2009 WL 4891764, at *10 (E.D.N.Y. 2009) (quoting *Capitol Records, LLC. v. VideoEgg, Inc.*, 611 F.Supp.2d 349, 362 (S.D.N.Y. 2009)). "[The] simple likelihood . . . that a defendant's product will find its way into New York" does not constitute foreseeability of harm in the state for purposes of § 302(a)(3) - it "must be coupled with evidence of a purposeful New York affiliation." *Id.* (citing *Kernan*, 175 F.3d at 241).

In addition to the foreseeability requirement, to establish jurisdiction under this section of the long arm statute, third-party plaintiff must also establish that Zytek derives substantial revenue from interstate or international commerce. Substantial revenue can mean either a substantial sum of money or that the defendant's interstate revenue is a substantial portion of its total revenue. *Launer v. Buena Vista Winery, Inc.*, 916 F.Supp. 204, 211 (E.D.N.Y. 1996). "Among the most important facts of each case are the overall nature of the defendant's business and the extent to which he can fairly be expected to defend lawsuits in foreign forums." *Ronar, Inc. v. Wallace*, 649 F.Supp. 310, 318 (S.D.N.Y.1986). Court must assess (1) the percentage of a party's overall revenue derived from interstate or foreign commerce; and (2) the absolute revenue generated by a defendant's interstate or international commerce. *Light v. Taylor*, 2007 WL 274798, at *4 (S.D.N.Y. 2007) (citations omitted). The amount of business that must be conducted to satisfy this standard "is less than that which is required to satisfy the conventional doing business standard". *Hollins v. U.S. Tennis Ass'n*, 469 F.Supp.2d 67, 77 (E.D.N.Y. 2006). Substantial revenue can be measured in an absolute or relative sense or by qualitative or quantitative means. *Jin v. EBI, Inc.*, 2006 WL 3335102, at *5 (E.D.N.Y. 2006). Even if the amount of revenue a company generates in New York is only 1% percent of its total revenue, it can still be considered substantial if the absolute amount appears substantial. *Id.* (citing *Ball*, 902 F.2d at 199). On a motion to dismiss for lack of jurisdiction pursuant to § 302(a)(3), defendant has the burden of showing the absence of substantial revenue. *Ingraham v. Carroll*, 90 N.Y.2d 592, 604 (1997).

"The year in which the complaint is filed is the proper point in time for determining whether defendant . . . meets the 'substantial revenue' prong of 302(a)(3)(ii)." *Bank of California v. Smith Barney, Inc.*, 1997 WL 736529, at *5, n. 5 (N.D.N.Y. 1997) (citing *Ball*, 902 F.2d at 199-

200); *Drake v. Lab. Corp. of Am. Holdings*, 2007 WL 776818, at *10 (E.D.N.Y. 2007). However, courts will also consider a period of years around the time that the complaint was filed. *Drake*, 2007 WL 776818, at *10 (citation omitted); *see also Traver v. Officine Meccaniche Toshci SpA*, 233 F.Supp.2d 404, 413-14 (N.D.N.Y. 2002) (citing *Barricade Books, Inc. v. Langberg*, 2000 WL 1863764, at *5 (S.D.N.Y. 2000)) (the court considered the defendant's revenues over a three-year period).

In support of the motion, third-party defendant submitted an affidavit from Harlin Gale Schock, the owner of "580090 Ontario Inc.", the company formerly known as Zytek. Between 2002 and 2008, Schock was President and owner of Zytek. Schock makes the following assertions regarding Zytek's business:

- Zytek never maintained an office or place of business anywhere in the State of New York;
- Zytek did not own real or personal property within New York;
- Zytek did not maintain any bank accounts in New York;
- Zytek did not transact any business within New York;
- Zytek employed 10 individuals in Ontario, Canada and did not send any of its employees into New York;
- Zytek was never authorized to do business within New York and never filed any papers with the New York Secretary of State;
- From 2007 to 2008, Zytek's gross sales were $2,100,000.00 and only 3.5% of sales were to the United States;
- Zytek had no customers in New York;
- Zytek did not promote sales of its product outside of Canada.

With respect to the transaction between Greenbank and Zytek, Schock asserts:

- Zytek sold a water-based glue product to Greenbank in February and April 2008;
- The manufacture, sale and delivery of the glue involved only Zytek and Greenbank and occurred within Ontario;
- Zytek was aware that Greenbank was in the cabinetry business but had no knowledge of the use for which the glue was purchased;
- Zytek had no knowledge of Greenbank's customer base or any dealings between Greenbank and the plaintiff or defendant, Industry Outfitters;
- All payments made in connection with this sale occurred in Ontario and the orders did not require the glue to be shipped to New York.

In further support of the motion, Zytek provided an affidavit from Rommel Hariprashad, a chemist formerly employed by Zytek. In 2008, Mr. Hariprashad met with a Greenbank representative at Greenbank's place of business in Whitby, Ontario regarding the adhesive and gave the representative a sample. Greenbank then placed two orders for the water-based adhesive which were filled from Zytek's only location in Whitby, Ontario. Mr. Hariprashad avers that he was not told or provided with any information regarding Greenbank's intended use of the product and did not know the product would be used in products shipped to New York.

In opposition to the motion, plaintiff provided affidavits from James Martinek, the President of Greenbank and Dennis Dubois, the President of Complexions. Martinek does not contest any of Schock's assertions regarding the subject transaction. Instead, Martinek provided the names of four companies with whom Greenbank conducted business. Industry Outfitters and Complexions are not included on that list. Indeed, there are no New York companies on that list. The list includes customers in Florida, Minnesota, Illinois and California.

Martinek also provided a list of work performed by Greenbank that was shipped assembled and then furnished to the United States. According to Martinek, the only contact Greenbank had with New York was in 2006:

> - We fabricated 4 department store boutique shops for Elizabeth Arden fragrances located in New York, Miami and Los Angeles; and
>
> - We constructed 3 Prescriptives department store boutique shops located in New York, Dallas, Boston.

Based upon the aforementioned, Martinek concludes:

> Because of the aforesaid action by Zytek in marketing and selling its products to other companies conducting business in New York, it is submitted that Zytek made a conscious effort to serve the New York market. I further submit that, given the foregoing, it is probable Zytek conducted business with woodworking businesses in New York that performed the same services as Greenbank.

In further support of the motion, Dubois avers,

> I find it impossible to believe that Zytek, which we maintain sold the defective glue to Greenbank that was utilized in assembling the cabinetry, casework and desk installed at the Complexions facility, was not fully aware that its product would end up in the New York marketplace. Since Zytek sold their adhesive product to woodworking businesses in the province of Ontario, Canada, which shares part of a border with the State of New York, they were certainly aware that their glue would be used to assemble products being shipped into New York State.

Based upon a review of the evidence submitted, the Court is unpersuaded by third-party plaintiff's assertions. Third-party plaintiff presents no evidence that Zytek purposefully sought to conduct business in New York or avail itself of the benefits of the laws of New York. Where, as here, there is a sale to a foreign distributor who then makes the independent decision to utilize the product in New York, personal jurisdiction is sustained only where it can be shown that when the named defendant made the out of state sale, it sought a "purposeful affiliation" with the State of

New York. *Stephan v. Babysport, LLC*, 499 F.Supp.2d 279, 290 (E.D.N.Y. 2007) (citations omitted); *see also Pentel of Am., Ltd. v. Sanford Corp*., 1992 WL 190145, at *3 (S.D.N.Y. 1992) (transaction between the third-party defendant and the third-party plaintiff was in Japan and had no knowledge of the sale of its pencils in New York). Here, the record, as it presently exists, contains no evidence that Zytek had any knowledge or reason to know that its glue would be used in New York. However, third-party plaintiff argues that since there has been no discovery at this stage of the litigation, all doubt with regard to Zytek's efforts to serve New York must be resolved in favor of Greenbank. Third-party plaintiff asserts, "[a]t a minimum Greenbank should be provided with the opportunity to examine Zytek's personnel and obtain discovery information regarding its marketing activities, as well as information concerning revenue generated by Zytek in the years prior to 2007, and also to verify the alleged amount Zytek claims as its percentage of revenue from international sales during 2007 and 2008".

**B. Jurisdictional Discovery**

Whether to permit discovery or to resolve the jurisdictional issue is for this court to decide. *Marine Midland Bank,* 664 F.2d at 904. In the Second Circuit, district courts have allowed jurisdictional discovery where a plaintiff has made less than a *prima facie* showing but has demonstrated "a sufficient start toward establishing personal jurisdiction.". *Hollenbeck v. Comeq, Inc*., 2007 WL 2484299, at *2 (N.D.N.Y. 2007); *see also Drake v. Lab. Corp. of Am. Holdings*, 2007 WL 776818, at *9 (E.D.N.Y. 2007) (citing *Aerotel, Ltd. v. Sprint Corp*., 100 F.Supp.2d 189, 194 (S.D.N.Y. 2000) (denying motion to dismiss to permit plaintiff to take jurisdictional discovery despite plaintiff's "conclusory" allegations)).

Presently, there is not enough evidence in the record to conclude that it would be appropriate to exercise jurisdiction over third-party defendant. Specifically, there is a dearth of

information regarding third-party's business relationships with New York. Moreover, there is insufficient evidence regarding the revenue that Zytek derived from commerce within Canada and outside Canada. *See Traver*, 233 F.Supp.2d at (the plaintiff was permitted to serve interrogatories upon the defendant regarding the subject sale and contract and for financial statements from 1998 to present). The 2007-2008 figure provided in Schock's affidavit does not indicate what percentage of Zytek's sales were to countries other than the United States. "[S]ection 302(a)(3)(ii) does not require that the substantial revenue from international commerce be linked to New York or the United States.". *Traver*, 233 F.Supp.2d at 413 ("this prong is intended to preclude the exercise of personal jurisdiction over non-domiciliaries 'whose business operations are of a local character.'") (citing *inter alia Bensusan Rest. Corp. v. King*, 126 F.3d 25, 29 (2d Cir. 1997)). Plaintiff's complaint was filed in 2009 and the third-party complaint was filed in 2010. Thus, the Court finds it necessary to consider third-party defendant's revenues from 2008 (the time of the transaction) until 2010 (the date of the filing of the third-party complaint). *See id.* at 414.

Accordingly, third-party defendant's motion for dismissal pursuant to Rule 12(b)(2) is denied with leave to renew upon completion of jurisdictional discovery including whether personal jurisdiction over third-party defendant would comport with due process.

**II. Insufficient Service of Process**

In the alternative, Zytek moves for dismissal based upon insufficient service of process. "According to Rule 4(h)(2), 'service upon a . . . foreign corporation . . . shall be effected . . . in a place not within any judicial district of the United States in any manner prescribed for individuals by subdivision (f) except personal delivery as provided in paragraph 2(C)(i) thereof'". *Zipper v. Nichtern*, 2007 WL 1041667, at *2 (E.D.N.Y. 2007). Fed.R.Civ.P. 4(f)(1) permits service "in a

place not within any judicial district of the United States: by any internationally agreed means reasonably calculated to give notice, such as those means authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." In the cases to which it applies, the Hague Convention preempts all methods of service which are inconsistent with its provisions. *Taft v. Moreau*, 177 F.R.D. 201, 203 (D. Vt. 1997) (the Hague Convention applies in all civil cases in which there is occasion to transmit a judicial document for service abroad). Article 10(a) of the Hague Convention states: "Provided the State of destination does not object, the present Convention shall not interfere with . . . the freedom to send judicial documents, by postal channels, directly to persons abroad." *Anderson v. Canarail, Inc.*, 2005 WL 2454072, at *4 (S.D.N.Y. 2005) (citing 20 U.S.T. 361, Art. 10 (Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, Nov. 19, 1965)). The United States and Canada are both contracting parties to the Hague Convention. *Id.* Canada does not object to service by postal channels. *Girafa.com, Inc. v. Smartdevil Inc.*, 728 F.Supp.2d 537, 543 (D. Del. 2010). In *Ackermann v. Levine*, 788 F.2d 830, 838-39 (2d Cir.1986), the Second Circuit held that service of process by registered mail satisfies the Hague Convention.. The Second Circuit concluded that 'send' in Article 10(a) was intended to mean 'service' and held that service through registered mail was appropriate. *Id.* Therefore, the plaintiffs' use of registered mail, return receipt requested, to transmit the summons and complaint was in compliance with the Hague Convention. *Id.*

Service of process must also satisfy Rule 4 of the Federal Rules of Civil Procedure and constitutional due process. *Id.* at 838. Methods of service must be "reasonably calculated to give notice." Fed.R.Civ.P. 4(f). Where a plaintiff "attempted in good faith to comply with the Hague Convention" and the defendant does "not dispute having received the complaint in this action ...

there is no prejudice to him [or her]." *In re South African Apartheid Litigation*, 643 F.Supp.2d 423, 432 (S.D.N.Y. 2009).

Here, the third-party complaint was forwarded, by registered mail, to Zytek's last known address: 524 Watson Street East, Whitby, Ontario.  In December 2010, Hank Mueller, an Adhpro employee, received a registered mail package addressed to Zytek at the Watson street location.  Schock avers that prior to the asset sale, Zytek's principal place of business and headquarters was at 524 Watson Street East.  Schock also admits that Zytek's asset sale to Adhpro did not include Zytek's real property and place of operation, 524 Watson Street East, Whitby, Ontario.  Rather, that property was leased to Adhpro and Adhpro operated from that location.  Schock does not assert, nor does the record establish, that 524 Watson Street East was not Zytek's last known address.  As such, Zytek has failed to establish that service of the third-party complaint by registered mail, pursuant to the Hague Convention, was improper.

Greenbank also argues that since Schock admitted to retrieving two packages containing the complaint, Zytek had sufficient notice and there is no prejudice.  Mr. Mueller provided an affidavit and stated that since Adhpro purchased the assets of Zytek, he opened the package.  Upon review of the contents, he determined that the mail was intended for Zytek and called Schock.  Indeed, in his affidavit, Schock states that he picked up two packages from Hank Mueller which, "Mueller . . . had opened then realized were intended for me as the President and owner of the company formerly known as Zytek".  Schock does not state when he retrieved these packages but Mueller avers that it was sometime in mid-January 2011.  As such, third–party defendant received notice of the third-party action and has not established prejudice sufficient to warrant dismissal on this basis.

**III.    Business Corporation Law ("BCL") § 1312**

In the alternative, Zytek argues that the third-party complaint should be dismissed pursuant to BCL § 1312(a) because Greenbank is a Canadian corporation unauthorized to do business in New York. Conversely, third-party plaintiff argues that § 1312(b) permits Greenbank, as a defendant in the action commenced by Complexions, to maintain a third-party action.

BCL § 1312(a) provides:

> A foreign corporation doing business in this state without authority shall not maintain any action or special proceeding in this state unless and until such corporation has been authorized to do business in this state and it has paid to the state all fees and taxes imposed under the tax law or any related statute, as defined in section eighteen hundred of such law, as well as penalties and interest charges related thereto, accrued against the corporation. This prohibition shall apply to any successor in interest of such foreign corporation.

However, BCL 1312(b) provides:

> [T]he failure of a foreign corporation to obtain authority to do business in this state shall not impair the validity of any contract or act of the foreign corporation or the right of any other party to the contract to maintain any action or special proceeding thereon, and shall not prevent the foreign corporation from defending any action or special proceeding in this state.

Courts in New York have determined that once haled into court as a defendant, a foreign corporation may assert third-party claims. *MacQuesten Gen. Contracting, Inc. v. HCE, Inc.*, 296 F.Supp.2d 437, 448 -450 (S.D.N.Y. 2003) (citations omitted). The cases do not differentiate among different types of third-party claims or limit such claims to indemnification and contribution. *Id.* ("Just as there is no 'distinct provision' precluding counterclaims or third-party claims generally, there is none prohibiting specific categories of third-party claims"). "If the statute precludes a third-party action, the defendant will be forced to institute a separate action in order to obtain full relief. Since such action would fail to serve the ends of judicial economy, it is

surely not within contemplation of the statute." *Williams Erectors of Suffolk County v. Mulach Steel Corp*., 684 F.Supp. 357, 358 (E.D.N.Y. 1988).

Zytek asserts that the third-party action is a "guise" for Complexions to recover against Zytek through Greenbank due to the liquidating agreement. Zytek has provided no caselaw in support of this position. Greenbank is a defendant in an action in New York. Greenbank's third-party complaint has four causes of action for indemnification and breach of warranty arising out of the same transaction and occurrences which are the basis of the original complaint. Accordingly, the Court denies this portion of third-party defendant's motion.

**IV. *Forum Non Conveniens***

Third-party defendant argues that New York is not a convenient forum requiring dismissal pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure and the doctrine of *forum non conveniens.* Zytek argues that Canada is an adequate alternative forum for the following reasons: Greenbank and Zytek are Canadian corporations; the transaction occurred in Canada; witnesses and documents are in Canada; and New York has little interest in adjudicating a dispute between two Canadian companies. Greenbank argues that Canada may not be an alternate forum as the statute of limitations may have passed. Moreover, third-party plaintiff argues that the underlying action was filed in the home of plaintiff which was the situs of the injury and all witnesses including Complexion's representatives, laboratory representatives and contractors reside in New York.

*Forum non conveniens* affords a court broad discretion to dismiss an action where adjudication in another forum "will best serve the convenience of the parties and the ends of justice." *Koster v. (Am.) Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 527 (1947); *accord PT United Can Co. Ltd. v. Crown Cork & Seal Co. Inc.,* 138 F.3d 65, 73 (2d Cir. 1998). The Second

Circuit has outlined a three-step process in analyzing a motion for dismissal based upon *forum non conveniens*: (1) what degree of deference is properly accorded to the plaintiff's choice of forum; (2) whether the alternative forum proposed by the defendant is adequate to adjudicate the parties' dispute; and (3) an analysis of the private and public interests implicated in the choice of forum.  *Norex Petroleum Ltd. v. Access Indus.*, Inc., 416 F.3d 146, 153 (citing *Iragorri v. United Techs. Corp*., 274 F.3d 65, 71-73 (2d Cir. 2001)).  The Supreme Court has articulated some of the factors to be examined in determining whether a case should be dismissed on forum non conveniens grounds:

> the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility of a judgment if one is obtained.

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1946).  However, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."  *Id*.; *see also Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 71 (2d Cir. 2003) ("It is well settled that a plaintiff's choice of forum is entitled to substantial deference").  When reviewing a motion to dismiss for forum non conveniens, there is an assumption that the plaintiff's choice of forum will stand unless the defendant can demonstrate that reasons exist to afford it less deference. *Pollux Holding*, 329 F.3d at 71 (citing *Iragorri,* 274 F.3d at 70-71).  A "plaintiff's choice of forum is generally entitled to great deference when the plaintiff has sued in the plaintiff's home forum." *In re Ski Train Fire In Kaprun Austria on November 11, 2000*, 2007 WL 1771582, at *3 (S.D.N.Y. 2007) (internal citations omitted).   In any situation, the balance must be very strongly in favor of the defendant, before the plaintiff's choice of forum should be disturbed, and the

balance must be even stronger when the plaintiff is an American citizen and the alternative forum is a foreign one. *Olympic Corp. v. Societe Generale*, 462 F.2d 376, 378 (2d Cir.1972) (internal citations and citations omitted).

The possibility of litigating the primary action and a third-party action in another forum is a significant factor to be considered on a motion to dismiss for *forum non conveniens*. *See Alcoa S.S. Co. Inc. v. MIV Nordic Regent*, 654 F.2d 147, 159 (2d Cir. 1941) (en banc) (citing with approval the district court's opinion, 453 F.Supp. 10, 13 (S.D.N.Y. 1978)). In cases where the underlying and third-party actions emanate from the same events, the interest in having a single forum litigate both disputes was deemed relevant to resolution of the *forum non conveniens* question. *Excel Shipping Corp. v. Seatrain Intern. S.A.*, 584 F.Supp. 734, 742 (D.C.N.Y. 1984) ("[s]ince the [third party plaintiff] already must defend the action commenced by the plaintiffs in this forum, to compel it to litigate elsewhere its own third-party action, arising out of the same voyage [], would cause it substantial hardship"). Courts have held that, "where . . . the plaintiff in the action is itself a defendant and instituted the third-party action in New York not to "harass" or "oppress" the third-party defendants by the choice of an inconvenient forum, but rather to protect itself from the possibility of inconsistent verdicts", the plaintiff's choice of forum is afforded deference. *Foremost Guar. Corp. v. Public Equities Corp.*, 1988 WL 125667, at *6 (S.D.N.Y. 1988).

Here, Greenbank is a defendant in an action commenced by a New York corporation in New York State. Thus, Greenbank is compelled to litigate the underlying claims in New York and as part of its defense, commenced a third-party action against Zytek. Third-party defendant has not proven that the action was meant to "harass" or "oppress". "The balance of convenience and hardships [does not] tip in favor of" a transfer to Canada "because the third-party action is

ancillary and dependent upon 'plaintiff's success in the main suit in [New York]". *See Garner v. Enright*, 71 F.R.D. 656, 661 (E.D.N.Y. 1976). Third-party defendant has failed to overcome the strong presumption in favor of Complexion's choice of forum. Zytek has not cited any case law in which a third party defendant has successfully moved to dismiss a case on *forum non conveniens* grounds over the objections of both plaintiffs and defendants. *In re Air Crash near Nantucket Island, Mass., on October 31, 1999*, 2004 WL 1824385, at *5 (E.D.N.Y. 2004). Therefore, requiring Zytek to defend the third-party claims in New York is an "appropriate exercise of this Court's discretion". *See Excel*, 584 F.Supp. at 742.

**CONCLUSION**

Accordingly, it is hereby

**ORDERED**, that third-party defendant's motion (Dkt. No. 70) to dismiss the third-party complaint pursuant to Fed. R. Civ. P. 12(b)(2) is **DENIED;** it is further

**ORDERED,** that the parties are directed to proceed to discovery before the Magistrate Judge on the issue of personal jurisdiction; it is further

**ORDERED**, that third-party defendant's motion (Dkt. No. 70) to dismiss the third-party complaint for insufficient service of process is **DENIED**; it is further

**ORDERED**, that third-party defendant's motion (Dkt. No. 70) to dismiss the third-party complaint pursuant to BCL § 1312 is **DENIED**; it is further

**ORDERED**, that third-party defendant's motion (Dkt. No. 70) to dismiss the third-party complaint pursuant to the doctrine of forum non conveniens is **DENIED**.

**IT IS SO ORDERED.**

Dated: August 9, 2011

Mae A. D'Agostino
U.S. District Judge